# In re JAMESON & MEYERS.

## PAULEY OIL CO. v. LYNCH.

Circuit Court of Appeals, Ninth Circuit.
May 27, 1929.

No. 5726.

Henry L. Knoop, of Los Angeles, Cal., for appellant.

Derthick & Hull, W. J. Cusack, and Herbert Ganahl, all of Los Angeles, Cal., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

WILBUR, Circuit Judge. The appellant, a creditor of a bankrupt partnership, presented a claim against the estate of the bankrupt for the sum of $25,635.47. This claim was disallowed by the referee upon the ground that the appellant had received a voidable preference in the sum of $9,100, which it refused to surrender. On a petition for review the District Court approved the action of the referee disallowing appellant's claim, and this appeal is from the order of disallowance.

The sole question presented upon appeal is whether or not appellant had actual knowledge or a reasonable cause to believe that a preference would be effected by the payments made to it by the bankrupt.

The indebtedness of the bankrupt to the appellant arose under a written contract of April 13, 1925, wherein the appellant, which was engaged in the business of refining oil and producing gasoline, agreed to sell the bankrupt a minimum of 5,000 gallons and a maximum of 10,000 gallons of gasoline per day for a period of one year. The bankrupt agreed to pay on the 1st of each month for all deliveries up to and including the 15th of the preceding month, and on the 15th of each month to pay for all deliveries up to and including the last of the preceding month, except in the case of large commercial accounts, in which case the appellant agreed to extend the same credit to the bankrupt as was extended by him to the commercial account. Under this contract the appellant continued to furnish gasoline until the 7th day of October, 1925, amounting in all to the sum of $46,653.82. In addition thereto, between August 13, 1925, and October 7, 1925, appellants furnished the bankrupt crude oil of the value of $14,481.65 for the use of the Los Angeles Gas & Electric Company. Appellant desired to furnish this oil directly to the consumer and to pay the bankrupt a commission for effecting the sale, but upon request of the bankrupt billed the oil directly to them and received from them a trade acceptance for $14,481.65, upon which acceptance the Farmers' & Merchants' National Bank advanced the amount thereof to the appellant. This acceptance was dishonored October 21, 1925, and before the date of any of the payments herein questioned. The total amount paid to appellant on account was $35,500, $22,500 of which was paid prior to October 7th and is not in question here. The following payments, amounting to a total of $13,000, were made at the time and in the following amounts:

| | |
|---|---:|
| October 27, 1925 | $ 500 |
| October 31, 1925 | 500 |
| November 5, 1925 | 500 |
| November 11, 1925 | 500 |
| November 16, 1925 | 1,500 |
| November 23, 1925 | 500 |
| November 25, 1925 | 2,500 |
| December 3, 1925 | 2,500 |
| December 14, 1925 | 2,000 |
| December 21, 1925 | 500 |
| December 26, 1925 | 1,500 |

With the exception of $500 paid December 21st and $1,500 paid December 26th, this amount was all paid on account of the Triangle Service Station, which was owned by Rosabelle Meyers, the wife of Robert F. Meyers, and, with the exception of $3,900, was repaid to her.

The preference found to have been given to the appellant was $9,100, being the amount of $13,000 less the $3,900 received from Mrs. Meyers and not repaid to her.

The payments secured from the bankrupt on account were made under great pressure

and the insistent and constant demand of the appellant. The bankrupt was evidently making large sales of gasoline during the entire period after the contract was made with appellant and continued to do so after appellant declined to sell further gasoline. Apparently there was no diminution of the volume of business done by the bankrupt, which he testified aggregated as much as $450,000 a month. The appellant, on February 12, 1926, joined in a petition of involuntary bankruptcy, but the testimony offered by the claimant at the time of hearing such petition did not disclose any change in the position of the bankrupt between the date of the first and last payment received by appellant, nor from the date of the last payment to the date of the filing of the petition. The president and officers of the appellant testified that they believed that the bankrupt was solvent at the time of all the payments in controversy, but predicated that belief upon the claim that the Triangle Service Stations belonging to the wife of Robert Meyers constitute a part of the assets of the bankrupt partnership. This belief, it was testified, was based upon the manner in which the property was used and also upon the fact that these Triangle Service Stations carried signs stating: "Triangle Service Station, R. Meyers, Sole Owner." This testimony, however, is disputed by Mr. Meyers, who testified that at all times here involved these stations were all plainly marked by a sign stating: "Rosabelle Meyers, Sole Owner." Mr. Meyers also testified that the payments made to the appellant were the only ones made by him after October 8th. This statement, however, is obviously inaccurate, because he also testified that he had repaid Mrs. Meyers all but $3,900 of the amount advanced from her funds to the appellant as above stated, and had purchased during that period large amounts of gasoline from the Shell Oil Company for cash. Inasmuch as the volume of the business of the service station apparently did not decrease, large amounts must have been paid in cash for gasoline in addition to that procured on credit from the Shell Oil Company, amounting to over $40,000. It was probably the intention of this witness to convey the idea that from and after the 8th day of October no money was paid on any obligation then existing other than that paid to the appellant.

It appears from the evidence that the appellants were advised during the period in which the payments in question were made that the bankrupt copartnership was in serious financial difficulty, unable to pay its bills when they accrued, unable to pay a trade acceptance when due, unable to borrow money from the bank, which had apparently theretofore extended credit; that it was compelled to borrow or take money from the separate property of Rosabelle Meyers in order to make the payments to them; and, in addition to these undisputed facts, the referee, if he believed the testimony of Mr. Meyers, was justified in the conclusion that the reason given by the appellant for refusing to furnish further gasoline was a mere subterfuge to conceal the real motive, which was a lack of confidence in the ability of the bankrupt to make payments for oil and gasoline received; for Mr. Meyers testified that crude oil could be in fact readily obtained upon the market at the posted price. The referee was also justified in finding that the appellant had notice of facts that would lead a reasonable man to conclude that the Triangle Service Stations belonged to Mrs. Meyers, if he credited the testimony of Mr. Meyers that the stations had been so designated by conspicuous signs for years.

In view of the fact that on this appeal no attack is made on the finding of the referee and the court that the bankrupt was in fact insolvent during the period when the preferential payments were made, this court cannot say that a manifest error of fact has occurred in the decision of the referee and in its approval by the District Court finding that appellant had reasonable cause to believe that a preference was intended; and therefore the order must be affirmed. Remington on Bankruptcy, § 3871. Brookheim v. Greenbaum (C. C. A.) 225 F. 763.